**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTICS INNOVATION LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD., and BBK ELECTRONICS CORPORATION, LTD.<br><br>    *Defendants.* | No. 2:26-cv-423<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Optics Innovation LLC by and through its undersigned counsel, files this Complaint against Defendants OnePlus Technology (Shenzhen) Company, Limited ("OnePlus"), Guangdong OPPO Mobile Telecommunications Corp., Ltd. ("OPPO"), and BBK Electronics Corporation, Ltd. ("BBK") (collectively, "Defendants") for infringement of United States Patent Nos. 10,687,708, and 10,623,705, (collectively, "Asserted Patents"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, Title 35 of the United States Code, to obtain damages resulting from Defendants' unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, and/or having imported into the United States products that infringe or indirectly infringe of one or more claims of the Asserted Patents.

1

**THE PARTIES**

2.      Plaintiff Optics Innovation LLC ("Optics" or "Plaintiff") is a corporation organized and existing under the laws of the state of Delaware with a place of business at 203 Anderson Street, Portland, ME.

3.      On information and belief, Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") is a company organized and existing under the laws of China having a principal place of business at 8/F, Tower C, Tai Ran Building, No.8 Tai Ran Road, Shenzhen, 518040, China. On information and belief, OnePlus may be served pursuant to the Texas Long Arm Statue and the provisions of the Hague Convention.

4.      On information and belief, Defendant Guangdong OPPO Mobile Telecommunications Corp., Ltd. ("OPPO") is a company organized and existing under the laws of China having a principal place of business at No. 18 Haibin Road, Wusha Village, Chang'an Town, Dongguan City, Guangdong, 523860, China. On information and belief, OPPO may be served pursuant to the Texas Long Arm Statue and the provisions of the Hague Convention.

5.      On information and belief, Defendant BBK Electronics Corporation, Ltd. ("BBK") is a company organized under the laws of China, having a principal place of business at No. 126, BBK Plaza, Wusha, Dongguan, 523850, China. On information and belief, BBK may be served pursuant to the Texas Long Arm Statue and the provisions of the Hague Convention.

6.      On information and belief, Defendants OnePlus, OPPO and BBK are affiliated companies and OnePlus and OPPO are wholly owned by BBK. On information and belief, BBK and OPPO conduct all or substantially all of their activities in the United States related to the products and/or services accused herein of infringement herein through OnePlus. Alternatively, OnePlus, OPPO, and BBK are agents or alter egos of each other such that the actions by one is

2

attributable to the others. Alternatively, OnePlus, OPPO, and BBK form a joint business enterprise such that the actions by one is attributable to the others. Herein, OnePlus, OPPO and BBK are collectively referred to as "Defendants."

7.    On information and belief, Defendants do business in Texas and in the Eastern District of Texas, directly or through intermediaries. Defendants market and distribute smartphones in Texas and throughout the United States directly or through intermediaries, and offer their products and/or services, including those accused herein of infringement, to customers and potential customers in Texas, including in the Judicial District of the Eastern District of Texas.

8.    In addition, Defendants have authorized sellers and sales representatives that offer and sell products accused herein of infringement through and/or into the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605.





## JURISDICTION AND VENUE

9.      Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 8 above.

10.     Jurisdiction and venue for this action are proper in this Judicial District.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

12.     This Court has specific and general personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. This Court has personal jurisdiction over Defendants at least because, through OnePlus's, OPPO's, and BBK's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial

District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

13.     For example, Defendants have authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Defendants have derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

14.     Defendants have each established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

15.     Venue is proper against Defendants pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are foreign corporations not resident in the United States, and venue is proper in any district against a foreign corporation. *See also In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants).

**JOINDER**

16.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 15 above.

17.     Joinder is proper under at least Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 at least because Defendants' infringing conduct as alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the U.S., offering for sale, and/or selling of constituents of the same accused products, and questions of fact common to all Defendants will arise in this action.

18.     OnePlus, OPPO, and BBK each make, use, import, offer for sale, and/or sell digital imaging devices, including OnePlus-branded smartphones accused of infringement herein.

19.     Each Defendant is accused of infringing the Asserted Patents by, *inter alia*, making, using, importing, offering for sale, and/or selling digital imaging devices, including OnePlus-branded smartphones.

20.     Based on the above, factual questions relating to OnePlus's, OPPO's, and BBK's infringement will substantially overlap.

**THE PATENTS-IN-SUIT**

21.     The Asserted Patents relate to image capture devices, including smartphones and tablets.

22.     U.S. Patent No. 10,687,708 ("the '708 Patent")[1], is entitled "Method and Apparatus For A Compact And High Resolution Mind-View Communicator," and was duly and legally issued

---

[1] U.S. Patent No. 10,687,708 is a public document available from the United States Patent and Trademark Office and, as of May 19, 2026, is available at the following link: https://ppubs.uspto.gov/api/pdf/downloadPdf/10687708?requestToken=eyJzdWIiOiI0MGI4MTE xZC0xNjljLTQ1M2YtODkzNy0zMDZiOTA1NDU2NGEiLCJ2ZXIiOiIzYTVkYTFiZS00Mjhk LTQ5MGEtYWI2ZS1jNjZkZTczNDgyMjgiLCJleHAiOjB9.

on June 23, 2020. The '708 Patent issued from U.S. patent application Serial Number 16/120,326, filed September 3, 2018 as a continuation of an application that issued as U.S. Patent No. 10,064,552. The term of the '708 Patent has not expired. The '708 Patent is valid and enforceable, and Optics Innovation LLC is the owner and assignee of all rights, title, and interest in the '708 Patent and, at a minimum, of all substantial rights in the '708 Patent. As such, Optics Innovation LLC has standing to sue and the right to recover damages for the infringement of the '708 Patent and pursue any and all causes and remedies, whether legal or equitable, related thereto.

23.    U.S. Patent No. 10,623,705 ("the '705 Patent")[2], is entitled "Method and Apparatus for a Wearable Imaging Device," and was duly and legally issued on April 14, 2020. The '705 Patent issued from U.S. patent application Serial Number 15/400,399, filed January 6, 2017 as a continuation of an application that issued as U.S. Patent No. 9.894,326 which is a continuation of an application filed June 4, 2010 that issued as U.S. Patent No. 8,872,910. The term of the '705 Patent has not expired. The '705 Patent is valid and enforceable, and Optics Innovation LLC is the owner and assignee of all rights, title, and interest in the '705 Patent and, at a minimum, of all substantial rights in the '705 Patent.  As such, Optics Innovation LLC has standing to sue and the right to recover damages for the infringement of the '705 Patent and pursue any and all causes and remedies, whether legal or equitable, related thereto.

24.    Each of the claims of the '708 Patent and the '705 Patent is presumed to be valid.

25.    None of the claims of the Asserted Patents are directed to an abstract idea, and the claims limitations, individually and as an ordered combination, involve more than performance of

---

[2] U.S. Patent No. 10,623,705 is a public document available from the United States Patent and Trademark Office and, as of May 19, 2026, is available at the following link:
https://ppubs.uspto.gov/api/pdf/downloadPdf/10623705?requestToken=eyJzdWIiOiI0MGI4MTE
xZC0xNjljLTQ1M2YtODkzNy0zMDZiOTA1NDU2NGEiLCJ2ZXIiOiIzYTVkYTFiZS00Mjhk
LTQ5MGEtYWI2ZS1jNjZkZTczNDgyMjgiLCJleHAiOjB9

well understood, routine, and conventional activities previously known to the industry as of the priority dates of the Asserted Patents.

26.    None of the claims of the Asserted Patents are directed toward fundamental economic practices, methods of organizing human activities, an idea itself, or mathematical formulations.

27.    The claims of the Asserted Patents are directed to a specific area of application of digital imaging and thus do not preempt others from using other methods and systems.

28.    The claims of the Asserted Patents also recite more than generic computer functionality and recite elements that were not purely conventional as of the priority dates of the Asserted Patents.

29.    The claims of the Asserted Patents recite specific improvements over prior art and conventional systems, apparatuses, and methods and represent meaningful limitations and/or inventive concepts. Further, in view of these specific improvements, the claims of the Asserted Patents, when such claims are viewed as a whole and in ordered combination, were not routine, well-understood, conventional, generic, existing, commonly used, well-known previously known, or typical as of the earliest priority date of each of the Asserted Patents.

30.    None of the claims of the Asserted Patents are representative of the Asserted Patents' other claims or claims of the other Asserted Patents.

31.    The Asserted Patents address and overcome the limitations of smart phones, tablets, and digital imaging devices that are of a relatively small form factor. Such devices include cameras typically having smaller lenses and detector chips with lower pixel count and thus a lower image resolution.'708 Patent, 15:56–63; '705 Patent, 9:64–10:5. The Asserted Patents claim devices, including smartphones and tablets, that, among other things, comprise at least two cameras which

8

are used to generate an output image that is an improvement over a conventional image generated by conventional imaging devices at the time of the Asserted Patents' priority dates.

32.    The '705 Patent is related to the '708 Patent through a shared grandparent patent, U.S. Patent No. 8,872,910.  The subject matter of the Asserted Patents is rooted in digital imaging technology and, as of their priority date, provides an unconventional solution to the problems with creating an image resembling human vision (centrally focused, with blurred peripherals) through use of a multi-camera device, such as smartphones and tablets, to calculate distance to an object in a scene.

33.    The asserted claims of the Asserted Patents are directed to improving digital imaging technology through methods and apparatuses comprising a lower resolution camera and higher resolution camera capable of capturing images of a scene and at least one processor calculating the distance to an object in a scene and producing an output image in which portions of the scene around the object are blurred in a manner that mimics the scene as if were to be viewed by human eyes.

34.    The Asserted Patents describe existing devices that contain zooming features that are required to bring an object much closer to a viewer. '705 Patent, 2:66-3:7; *see also* '708 Patent, 4:8–14. The Asserted Patents describe the solution of creating a human eye's view through an arrangement where two cameras capture "two views of every scene, a high resolution but narrow FOV and a lower resolution but wider FOV (similar to human peripheral view.)" '705 Patent, 10:57–61. "[W]ith two lenses [contained in the device], the distance of any object from the camera can be estimated." '705 Patent, 6:35–37; *see also* '708 Patent, 19:12–16 ("the object distance is estimated via triangulation applied to the scene recording cameras"). The Asserted Patents further

9

describe that "[f]or human like display, the resolution of the peripherals needs to be lowered." '705 Patent, 12:44–45.

35.     It is the capture by two cameras of two images of a scene containing an object by cameras having different image resolutions and fields of view, and executing a distance calculation of the object in the scene, that allows for the processor to create an output image that mimics how human eyes perceive the world (i.e., an object in focus, with out-of-focus periphery).

36.     The asserted claims of the '708 Patent expressly require a multi-camera imaging apparatus, such as smartphones and tablets, having the capability of capturing first and second images of a scene by cameras having different image resolutions and fields of view as well as, *inter alia*, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or, similarly, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera,

10

wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8. These elements improve upon digital imaging technology. In particular, the processor uses the two images of a scene captured by separate cameras to calculate the distance to an object in a scene and effectively applying the distance information to generate an output image that resembles a human eye's view of the object (i.e., an object in focus, with out-of-focus periphery). Thus, the asserted claims of the '708 Patent are directed to specific improvements to digital imaging and are not directed to an abstract idea.

37.    The asserted claims of the '708 Patent are directed to a specific field of application, a multi-camera image capture device, such as smartphones and tablets, or method, that utilizes a high resolution and lower resolution image to calculate distance from the cameras to an object for the purposes of generating an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object. The asserted claims of the '708 Patent therefore do not preempt others from using the general concepts of image enhancement or image alteration.

38.    The asserted claims of the '708 Patent recite more than generic computer functionality and recite elements that were not purely conventional as of its priority date. The asserted claims of the '708 Patent recite at least the following steps or capabilities which, either alone or as an ordered combination, were unconventional and unique, and were not well-known, routine, or conventional: capturing first and second images of a scene by cameras having different image resolutions an fields of view as well as "calculating, based on at least one of the first image

11

and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or similarly, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8. These elements were not well-known, routine, or conventional because of at least the capability of using a multi-camera device, such as smartphones and tablets, having two cameras that have different image resolutions and fields of view to capture a scene, and a processor to calculate based on the images the distance to an object within that scene, and use the distance to generate an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order

12

to emphasize the object did not exist in conventional imaging systems as of the priority date of the '708 Patent.

39.     The asserted claims of the '705 Patent expressly require a multi-camera imaging apparatus, such as smartphones and tablets, having the capability of capturing a first image of a scene that includes an object and a second higher resolution image that is a subset of the first scene and includes the object as well as, *inter alia*, "execute a distance calculation procedure, based upon at least one of the received images, to estimate the distance of at least one point on the object from the portable imaging apparatus," "execute an image blurring procedure, based at least in part upon the estimated distance, to reduce the image resolution of at least a portion of at least one of the received images," and "generate an output image that has at least two image areas, a first area that includes the object and is a subset of the second image, and a second area that at least partially surrounds the first area, wherein: the second area is blurred at least partially as a result of the image blurring procedure, and the resolution of the second area is less than the resolution of the first image." *See*, *e.g.*, '705 Patent, 17:45–59. These elements improve upon digital imaging technology. In particular, a processor uses two images of a scene captured by separate cameras to calculate the distance to an object in the scene and effectively applying the distance information to generate an output image that resembles a human eye's view of the object (i.e., an object in focus, with out-of-focus periphery). Thus, the asserted claims of the '705 Patent are directed to specific improvements to digital imaging and are not abstract.

40.     The asserted claims of the '705 Patent are directed to a specific field of application, a multi-camera image capture device, such as smartphones and tablets, or method, that utilizes a high resolution and lower resolution image of a scene to calculate distance from the cameras to an object for the purposes of generating an output image with an inner area with increased resolution

and a surrounding area with decreased resolution in order to emphasize the object. The asserted claims of the '705 Patent therefore do not preempt others from using the general concepts of image enhancement or image alteration.

41.    The asserted claims of the '705 Patent recite more than generic computer functionality and recite elements that were not purely conventional as of its priority date. The asserted claims of the '705 Patent recite at least the following elements which, either alone or as an ordered combination, were unconventional and unique, and were not well-known, routine, or conventional: "a first camera module having a first field of view, a first image resolution, and a first color filter array, for capturing a first image which is an image of a first scene that includes an object," "a second camera module having a second field of view, a second image resolution that is higher than the first image resolution, and a second color filter array, for capturing a second image, wherein: the second image is an image of a second scene that includes the object, the second scene is a subset of the first scene" and at least one processor configured to "execute a distance calculation procedure, based upon at least one of the received images, to estimate the distance of at least one point on the object from the portable imaging apparatus," "execute an image blurring procedure, based at least in part upon the estimated distance, to reduce the image resolution of at least a portion of at least one of the received images," and "generate an output image that has at least two image areas, a first area that includes the object and is a subset of the second image, and a second area that at least partially surrounds the first area, wherein: the second area is blurred at least partially as a result of the image blurring procedure, and the resolution of the second area is less than the resolution of the first image." *See, e.g.*, '705 Patent, claim 1. These elements were not well-known, routine, or conventional at least because the capability of using a multi-camera device, such as smartphones and tablets, having two cameras to capture a scene, calculate the

14

distance to an object within that scene, and use the distance to generate an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object did not exist in conventional imaging systems as of the priority date of the '705 Patent.

**DEFENDANTS' INFRINGING PRODUCTS**

42.    Smartphones and tablets have become adept at capturing digital images using multiple built-in cameras. These cameras offer different features for image effects, including image enhancement, portrait mode, and high dynamic range. These smartphones and tablets contain processors programmed with instructions to capture and enhance images.  These processors work with the several device cameras to apply effects to the images and save each image to memory.

43.    Defendants make, use, sell, offer for sale, and/or import into the United States a variety of smartphones. These devices include, among others, the OnePlus 5, OnePlus 6, OnePlus 7, OnePlus 8, OnePlus 9, OnePlus 10, OnePlus 11, OnePlus 12, and OnePlus 13 smartphones. Defendants actively market and support sales of these smartphones through their websites and through third-party sellers, such as Best Buy and Amazon.

44.    Defendants' devices are designed to take clear, high resolution digital photographs. Consumers often purchase these products for their ability to generate high resolution photographs with different visual effects. In order to achieve this, Defendants have designed their smart devices with multiple cameras, each offering different capabilities and resolutions. These devices include, for example, a wide-angle camera, an ultra-wide camera, and/or a telephoto camera.

45.    Defendants' smartphones include additional camera modes and features. Portrait mode is one such example, wherein the device utilizes at least two captured images to calculate

15

distances to objects within the image scene in order to emphasize the object by blurring the area around the object, known as the "Bokeh" effect.

## COUNT I: INFRINGEMENT OF
## U.S. PATENT NO. 10,687,708

46.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 45 above.

47.    Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '708 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smart devices, such as smartphones, that embody the inventions claimed in the '708 Patent, in particular, at least claim 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, within the United States and within this District. Defendants have been and are engaged in one or more of these direct infringing activities related to its smartphones, including at least: (i) OnePlus 5, OnePlus 6, OnePlus 7, OnePlus 8, OnePlus 9, OnePlus 10, OnePlus 11, OnePlus 12, OnePlus 13, OnePlus 14, and OnePlus 15 and (ii) any other device, such as tablets, that comprise two or more cameras and includes the Portrait mode (collectively hereinafter the "'708 OnePlus Branded Accused Products").

48.    Defendants sell the '708 OnePlus Branded Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively market and support sales, including through their websites.

16

49.    Notice of the factual bases of Plaintiff's allegations of infringement by the '708 OnePlus Branded Accused Products is provided in the claim charts attached as Exhibits A–B.[3] Exhibits A–B demonstrate how the '708 Patent is infringed by reference to the OnePlus 5 and OnePlus 12 devices, which, on information and belief, are representative of the infringing aspects of at least the devices identified in Paragraph 47.  The attached infringement charts are based on Plaintiff's current understanding of the '708 OnePlus Branded Accused Products based on information publicly available at the time of this filing. This selection of claims and products should not be considered limiting of Defendants' infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery.

50.    Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business partners, are indirectly infringing the '708 Patent, including at least claims 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Defendants' customers directly infringe at least by using the '708 OnePlus Branded Accused Products. Defendants retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

51.    Defendants have actual notice of the '708 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Defendants obtaining any actual knowledge of the '708 Patent prior to commencement of this lawsuit will be confirmed during discovery.

---

[3] The exhibits illustrate the infringement of the respective devices as to the asserted apparatus claims.  The asserted method claims are likewise infringed on the same bases as addressed regarding the apparatus claims.

17

52.     Defendants indirectly infringe the '708 Patent by inducing third parties, including customers, to use the '708 OnePlus Branded Accused Products in their normal and customary way and for their intended purpose. For example, on information and belief, Defendants also induce such third parties by (i) selling the '708 OnePlus Branded Accused Products to third parties when such products are designed to infringe the '708 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '708 Patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for operating the '708 OnePlus Branded Accused Products in their customary way; (iv) advertising and promoting the '708 OnePlus Branded Accused Products, including assisting purchasers in locating local dealers for specific smart devices, through their websites and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the '708 OnePlus Branded Accused Products.

53.     Upon information and belief, Defendants know that their customers, distributors, and resellers follow and/or use Defendants' support, instructions, user guides, and technical specifications and use, offer to sell, or sell the '708 OnePlus Branded Accused Products within the United States.   Defendants directly benefit from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '708 OnePlus Branded Accused Products.

54.     On information and belief, Defendants will continue to engage in activities to encourage customers, distributors, and resellers that will constitute inducement of infringement, and with the actual intent to cause the acts that they know or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '708 Patent.

18

55. Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smart devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing the '708 OnePlus Branded Accused Products for use in practicing the patented method, knowing that such devices are material to the invention claimed by at least claims 1, 3, and 7 of the '708 Patent, and are especially made or especially adapted for use in infringing the patented method and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

56. Defendants' direct and indirect infringement of the '708 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Defendants cease their infringing activities, they will continue to injure Plaintiff.

57. On information and belief, Defendants continue to infringe the '708 Patent by making, using, selling, offering for sale and/or importing in the United States the '708 OnePlus Branded Accused Products and by inducing and/or contributing to the direct infringing use of the '708 OnePlus Branded Accused Products by others, in reckless disregard of Plaintiff's patent rights. Defendants continue their infringement notwithstanding actual knowledge of the '708 Patent (including through service of this Complaint) and without a good faith basis to believe that their activities do not infringe any valid claim of the '708 Patent. Defendants' infringement of the '708 Patent, following its knowledge of the '708 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

58.     On information and belief, Defendants will continue intentionally and deliberately infringing, notwithstanding actual knowledge of the '708 Patent. Defendants' future acts of infringement will constitute continuing willful infringement of the '708 Patent.

## COUNT II: INFRINGEMENT OF
## U.S. PATENT NO. 10,623,705

59.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 58 above.

60.     Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have in the past and continues to directly infringe the '705 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smart devices that embody the inventions claimed in the '705 Patent, in particular, at least claim 1, within the United States and within this District. Defendants have been and are engaged in one or more of these direct infringing activities related to its smartphones, including at least: (i) OnePlus12, and (ii) any other device, such as tablets, that comprise two or more cameras, includes the Portrait mode, and the field of view of the higher resolution camera is between 2 to 5 times smaller than the lower resolution camera(collectively hereinafter the "'705 OnePlus Branded Accused Products").

61.     Defendants sell the '705 OnePlus Branded Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively market and support sales, including through their websites.

62.     Notice of the factual bases of Plaintiff's allegations of infringement by the '705 OnePlus Branded Accused Products is provided in the claim charts attached as Exhibit C.  Exhibit C demonstrates how the '705 Patent is infringed by reference to the OnePlus12, which, on information and belief, is representative of the infringing aspects of at least the devices identified

20

in Paragraph 60. The attached infringement chart is based on Plaintiff's current understanding of the '705 OnePlus Branded Accused Products based on information publicly available at the time of this filing. This selection of claims and products should not be considered limiting of Defendants' infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery.

63.     Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, are indirectly infringing the '705 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Defendants' customers directly infringe at least by using the '705 OnePlus Branded Accused Products.  Defendants' retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

64.     Defendants have actual notice of the '705 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Defendants obtaining actual knowledge of the '705 Patent prior to commencement of this lawsuit will be confirmed during discovery.

65.     Defendants indirectly infringe the '705 Patent by inducing third parties, including customers, to use the '705 OnePlus Branded Accused Products in their normal and customary way and for their intended purpose.  For example, on information and belief, Defendants also induce such third parties by (i) selling the '705 OnePlus Branded Accused Products to third parties when such products are designed to infringe the '705 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '705 Patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for operating the '705 OnePlus Branded Accused Products in their customary way;

(iv) advertising and promoting the '705 OnePlus Branded Accused Products, including assisting purchasers in locating local dealers for specific smart devices, through their websites and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the '705 OnePlus Branded Accused Products.

66.    Upon information and belief, Defendants know that their customers, distributors, and resellers follow and/or use Defendants' support, instructions, user guides, and technical specifications and use, offer to sell, or sell the '705 OnePlus Branded Accused Products within the United States.    Defendants directly benefit from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '705 OnePlus Branded Accused Products.

67.    On information and belief, Defendants will continue to engage in activities to encourage customers, distributors, and resellers that will constitute inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '705 Patent.

68.    Defendants' direct and indirect infringement of the '705 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Defendants cease their infringing activities, they will continue to injure Plaintiff.

69.    On information and belief, Defendants continue to infringe the '705 Patent by making, using, selling, offering for sale and/or importing in the United States the '705 OnePlus Branded Accused Products and by inducing the direct infringing use of the '705 OnePlus Branded Accused Products by others, in reckless disregard of Plaintiff's patent rights.  Defendants continue

22

their infringement notwithstanding actual knowledge of the '705 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '705 Patent. Defendants' infringement of the '705 Patent, following its knowledge of the '705 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

70.     On information and belief, Defendants will continue intentionally and deliberately infringing, notwithstanding actual knowledge of the '705 Patent. Defendants' future acts of infringement will constitute continuing willful infringement of the '705 Patent.

**JURY DEMAND**

71.     In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

i.      A judgment declaring that Defendants have directly and/or indirectly infringed and is directly and/or indirectly infringing one or more claims of the Asserted Patents;

ii.     A judgment awarding Plaintiff compensatory damages as a result of Defendants' infringement of one or more claims of the Asserted Patents, together with pre- and post-interest and costs, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

23

iii.        A judgment awarding Plaintiff treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of one or more claims of the Asserted Patents;

iv.        A judgment declaring this case exceptional and awarding Plaintiff its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

v.        A grant of a permanent injunction enjoining Defendants from further acts of infringement of one or more claims of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.        Such other and further relief the Court deems just and equitable.

Dated: May 21, 2026

Respectfully Submitted,

*/s/ Daniel S. Stringfield w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Daniel S. Stringfield (Admitted ED Tex)
IL Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (Admitted ED Tex)
IL Bar No. 6216483
tmaloney@nixonpeabody.com
Randal S. Alexander (Admitted ED Tex)
IL Bar No. 6298199
ralexander@nixonpeabody.com
Daniel D. Georgiev (Admitted ED Tex)
IL Bar No. 6326950
Texas State Bar No. 24136166
dgeorgiev@nixonpeabody.com
**NIXON PEABODY LLP**
70 W. Madison St. Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

Patrick O. Doyle (Admitted ED Tex)
CA Bar No. 329810
pdoyle@nixonpeabody.com
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
Fax: (415) 984-8300

***Attorneys for Plaintiff***
***Optics Innovation LLC***

25